**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION | * |
| Plaintiff | * |
| v. | *   Civil No. PJM 03-3285 |
| UNION CORP FINANCIAL GROUP, INC., et al. | * |
| Defendants | * |

**OPINION**

I.

This case arises from a series of allegedly sham equipment leases that were assigned to General Electric Capital Corporation (GECC) by Union Corp Financial Group, Inc. (Union Corp). There are two groups of Defendants -- (1) Union Corp, f/k/a BancUnion Trust and certain of its officers residing in Florida, [1] collectively "the Florida Defendants," who served as lease brokers; and (2) Athena Beauty, Inc., Beautician Design Center, Inc., Beautician Supply & Equipment Co., Inc., Indoff, Inc. t/a Salon Depot, and Donald E. Gertler, collectively "the Maryland Defendants," who served as equipment vendors. The Complaint alleges that Gertler induced third party salon and beauty supply store owners to enter into fraudulent equipment leases with alter ego entities (Athena

---

[1] The officers are Hector Estrada, Martha Estrada, and Michael Sagaro.

Beauty, Inc., et al.). It further alleges that Gertler failed to provide the leased equipment or provided equipment that was far inferior to what the lessees thought they were getting and that he conspired with the Florida Defendants to create phony documentation to make the leases look legitimate. Thereafter, according to the Complaint, the Florida Defendants, acting as lease brokers, assigned the fraudulent leases to GECC. GECC's complaint consists of twenty-two counts including, *inter alia*, breach of contract, fraud, civil conspiracy, and violations of the RICO Act, in November 2003.

In December 2003 and January 2004, GECC obtained and served prejudgment writs of attachment at certain of the Florida Defendants' homes and workplaces.

After initially moving to dismiss the Complaint, the Florida Defendants moved to compel arbitration under the Master Broker Agreement executed by GECC and BancUnion. The Agreement contained an arbitration clause requiring all disputes arising thereunder to be submitted to arbitration. The Agreement also provided, however, that "in the event separate assignment agreements are entered into, the terms of the separate assignment agreements shall prevail." Because the alleged sham leases were the subject of separate assignment agreements, which contained no arbitration clause, this Court held that disputes relating to them were not covered by the Master Broker Agreement's arbitration clause, and denied the Florida Defendants' Motion to Compel Arbitration. The Florida Defendants then moved to certify the question of arbitrability for an purposes of taking interlocutory appeal to the Fourth Circuit and for a stay pending the resolution of the appeal. This Court denied these motions and the parties proceeded with discovery.

In January 2005, the Fourth Circuit stayed all proceedings in this Court pending resolution of the appeal. Then, in July 2005, finding the assignment significantly "relate(d)" to the Master Agreement, the Fourth Circuit reversed this Court's denial of the Motion to Compel

Arbitration. In remanding the case, it also ordered that the Florida Defendants be awarded attorneys fees in accordance with a provision of the Master Broker Agreement. On remand, this Court directed the parties to confer and attempt to reach an agreement on fees. They apparently did confer but failed to reach agreement. The Florida Defendants then filed the instant Motion in seeking fees and costs in accordance with the Fourth Circuit opinion.

The Florida Defendants seek $220,064 in fees and $6,047 in costs for 708.9 hours of attorney time and 69.04 of paralegal time. Their lead counsel, Joseph Peter Drennan, claims to have spent 326.2 hours on the matter at an hourly rate is $250. Ronald Strauss, counsel in Florida, claims 312.20 hours working on the matter, at an hourly rate of $400. Patrick Michael Donahue, local counsel in Maryland, together with one of his associates at an expended 46.5 hours on the matter at an hourly rate of $200. The Florida Defendants also ask that the fee award be paid against the one million dollar bond that GECC posted when it requested the writs of attachment.

The Florida Defendants argue that these fees and costs are justified given the complexity of this litigation and the fact that they were required to litigate in two fora due to GECC's having obtained prejudgment writs of attachment in Florida. Moreover, they were forced to simultaneously litigate in this Court and prosecute their appeal before the Fourth Circuit, as the case was not stayed pending the outcome of the appeal until roughly nine months after the Motion to Compel Arbitration was denied.

GECC argues that whereas the fee request covers *all* of the Florida Defendants' fees, only fees related to the enforcement of the arbitration clause are recoverable. GECC also opposes the fee request on grounds that both the hourly rates of the Florida Defendants' counsel and the number of hours that they have billed are unreasonable.

II.

Paragraph Thirteen of the Master Broker Agreement contains the following provision on attorneys' fees:

> If enforcement action is taken to enforce any term of this Agreement, the prevailing party in such action shall be entitled to a reasonable attorney fee, including attorney fees incurred at trial, on appeal and review, or incurred without actions, suits or proceedings, together with all costs and expenses incurred in pursuit thereof.

The Fourth Circuit's directive, in remanding this case for consideration of attorneys fees, was spare; it says only that "BancUnion is entitled to attorney's fees <u>for defending this action in litigation</u>" (*Emphasis added*). The Florida Defendants submit that this language plainly contemplates an award of <u>all</u> fees and costs incurred in their suit. GECC says that the only term of the Agreement that the Florida Defendants were trying to enforce was the arbitration clause; hence they should not recover fees and costs unrelated to compelling arbitration.

There is case authority that lends support to GECC's view as a general proposition. *Cf. Harter v. Iowa Grain Co.*, 220 F.3d 544, 560 (7th Cir. 2000) ("Harter need not reimburse The Andersons for its discretionary litigation efforts unnecessary to the collection. Clearly, opposing Harter's interlocutory appeal from the district court order compelling arbitration was necessary to collection of damages. These portions of the award are confirmed. Also necessary to The Andersons' collection of damages was The Andersons' request for an injunction forcing Harter to place in escrow profits he received on the sale of farm assets."). However, the Fourth Circuit's language in the present case is unambiguously broad – "fees for defending this litigation" – which can only mean any and all fees and costs. The Court accepts that as the basis on which it will proceed.

The standard for determining a fee award is the lodestar method: multiplying "the number of hours reasonably expended on the litigation...by a reasonably hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar amount may be adjusted after taking account of the following factors: (1) time and labor expended; (2) novelty and difficulty of questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the litigation; (5) the customary fee for like work; (6) the attorneys' expectation at the outset of the litigation; (7) time limitations imposed by the client or the circumstances of the case; (8) amount in controversy and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case within the legal profession; (11) the nature and length of the professional relationship between the attorney and client; and (12) attorneys' fees awards in similar cases. *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1995). Time expended in preparing fee applications is compensable in a court ordered fee award. *Daly v. Hill*, 790 F.2d 1071, 1080 (4th Cir. 1986).

III.

As indicated, the Florida Defendants seek compensation for 708.9 hours of attorney time and 69.04 hours of paralegal time. Insofar as the complexity of the case and the remaining *Hensley* factors are concerned, they invite the Court to consider *inter alia* the following:

–   GECC filed a seventy-two page, twenty-two count Complaint against Defendants;

–   GECC improperly obtained and served prejudgment writs of attachments on certain Defendants in Florida, requiring to Defendants to litigate both here and in Florida and to retain Ronald Strauss as local counsel in Florida; Strauss did considerable work "on the ground" in Florida familiarizing himself with GECC's business practices and dealings with the Florida Defendants;

– Because GECC failed to acknowledge that it was bound by the arbitration clause in the Master Broker Agreement, rather than the case moving quickly to arbitration, it was held up for over two years in this Court and before the Fourth Circuit;

– GECC has vigorously contested every issue before this Court, including the arbitrability of this dispute and the propriety of an interlocutory appeal; GECC also moved for Default Judgment against the Florida Defendants long after it was clear that the Florida Defendants were actively pursuing their right to have the case taken to arbitration;

– Because the case was not stayed pending the resolution of the appeal, the Florida Defendants were forced to go forward with discovery before this Court while simultaneously prosecuting their appeal (which GECC moved twice to dismiss) before the Fourth Circuit; and

– GECC rebuffed the Florida Defendants' good faith effort to resolve the issue of fees and costs informally.

GECC replies:

In making their fee request, the Florida Defendants have a duty to exercise "billing judgment" to exclude from their request "hours that are excessive, or otherwise unnecessary, just as a lawyer in private practice is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434. The Florida Defendants, says GECC, have failed to exercise the appropriate level of "billing judgment" in their request.

Thus, GECC continues:

The billing records supported in support of Defendants Motion are replete with excessive and/or duplicative time entries. Attorney Drennan, for example, billed 1.5 hours in a single day solely for reading and responding to emails; .2 hours for calling the Clerk's Office regarding the closure of the courthouse in honor of President Reagan; and .2 hours for review of a single voicemail message from one of his clients. Other entries are duplicative. There is no reason

why Attorney Strauss had to spend 16 hours of time to prepare for and attend oral argument before the Fourth Circuit given his limited role as local counsel in Florida.

Additionally, Attorney Strauss's $400 per hour rate is unreasonable given his capacity as local counsel. The reasonableness of his rate must be measured by the prevailing market rate where the court sits. *See Rum Creek*, 31 F.3d at 175. It is not proper for him to charge more for out-of-state litigation than for in-state litigation. His rate should be no greater than Attorney Drennan's rate of $250 per hour and should be closer to Attorney Donahue's rate of $200.

IV.

The Court agrees that there is excessive and duplicative billing in the Florida Defendants' request. The Court notes a substantial number of .2 hour increments in Attorney Drennan's time logs. There are very few .1 hour time entries in the logs. This suggests that an additional .1 hour has been added to many tasks that must have taken less than 6 minutes. The majority of the attorney's phone calls are listed at .2 hours, meaning they could be anywhere from 7-12 minutes. It is difficult to believe that the attorney never had calls that were 6 minutes or less. For example, Attorney Brennan billed .2 hours to call the Clerk's Office and ask whether the Court would be closed in recognition of President Reagan's death. That could not have taken more than 6 minutes. Other tasks either took an unreasonable amount of time, *e.g.*, .3 hours to draft a notice of appearance for the local counsel, or appear to have been overstated. Attorney Drennan has approximately 480 time entries. An increment of .1 hour for each would total 48 additional hours, or $12,000. [2] Assuming that he may have added more than .1 hour for some larger tasks, *e.g.*, that

---

[2] This is not to say that the attorney actually added .1 hour to every entry; only that increments of .1 hour very quickly add up.

he added .2 hours or more to such tasks, the number would be greater still.  Additionally, certain of Attorney Drennan's entries are too vague to permit determination of whether they were reasonable. For example, he shows numerous entries as "Call to/from Martha," with no further explanation. While Attorney Strauss's time logs seem a bit more unreasonable, it is difficult to escape the conclusion that there has been at least some duplicative billing.  At the same time, Attorney Strauss's $400 hourly billing rate is exorbitant, particularly in light of the fact that the Rules and Guidelines for Determining Lodestar Attorneys' Fees in Civil Rights and Discrimination Cases in the District, suggest – at the top of the scale – hourly rates for attorneys admitted to the bar more than eight years as between $200-$275.  [3] *See* Appendix B to the Rules of the United States District Court for the District of Maryland.

Deciding fee questions is never an easy task and often involves something of a *Gestalt* judgment.  The present case is no different.  The Court has concluded that the hours claimed by Defendants involve some questionable entries, some undue minimum time entries and  at least insofar as one attorney is concerned, an unjustifiably high hourly rate.  Considering all the *Hensley* factors, the Court has determined to reduce the total hours claimed by the Florida Defendants by 30% and the hourly attorney rate for all the Florida Defendants to $225.  The paralegal time remains at 69.04 hours and the hourly rate will be set at $90.

Accordingly, the Florida Defendants are entitled to attorney's fees of $111,645.00:

$$.70\,(708.9) \;=\; 496.2 \;\;\text{(hours)}$$
$$\phantom{.70\,(708.9) \;=\;} \times\; \underline{225.0}$$
$$\phantom{.70\,(708.9) \;=\;} \$111{,}645.00$$

---

[3] Paralegals' hourly rates are set at $90 under the guidelines.

They are awarded paralegal fees of $6,213.60:

              69.04    (hours)
     x    <u>  90</u>

          $6,213.60

Full costs will be awarded in the amount of $6,047.00.

The total award is $123, 056.00:

| Attorneys Fees | $ 111,645.00 |
| --- | --- |
| Paralegal Fees | 6,213.60 |
| Costs | <u>6,047.00</u> |
| | $ 123,905.60 |

A separate Order will be **ENTERED**.

 

                                                          /s/
                                            PETER J. MESSITTE
September 11, 2006               UNITED STATES DISTRICT JUDGE